Argued 21 February, decided 27 March, 1906.

## STATE *v.* LANE.

84 Pac. 804.

REMARKS AND CONDUCT OF JUDGE BEFORE THE JURY—INSTRUCTIONS.

1. Every act and remark of a trial judge in the presence of a jury may appreciably affect the verdict, and therefore it has been held in some courts that every remark of a trial judge concerning the testimony in a case on trial before him, made in the presence of the jury, is to be considered an instruction.

TRIAL—PROVINCE OF JURY—REMARKS OF JUDGE.

2. A trial judge may with propriety correctly state the testimony of a witness, where there is a confusion or dispute as to what the testimony was, and in so doing he does not invade the right of the jury to pass on all questions of fact, as reserved by Section 139, B. & C. Comp.: *State* v. *Lucas,* 24 Or. 168, distinguished.

Statement by MR. JUSTICE MOORE.

The defendant, B. F. Lane, was charged, by an information, with the crime of assault with intent to kill, alleged to have been committed in Lake County, January 22, 1905, by shooting and wounding one Birt McKune, and having been tried therefor, he was convicted of the crime of assault with a deadly weapon and appeals from the judgment which followed.

The bill of exceptions shows that Ambrose Reeder, having been called as a witness by the State, testified that on January 22, 1905, he was employed by the defendant as a sheep herder; that prior to the trial he had told several persons that he witnessed the shooting and saw McKune fire at Lane before the latter shot at him. Reeder admitted that he did not see the shooting and that his prior statements in relation thereto were induced by fear of the defendant, and, in referring to threats made by Lane to him, the witness testified as follows:

"A. He said he would have old Mack to prosecute me if I didn't swear to what he wanted me to.

Q. Who was the old Mack referred to?

A. Fellow that was running a gambling house in Silver Lake.

Q. What is his name?

A. McCarty. * *

Q. Do you recollect whether or not anything was said about McCarty offering money for information about the whiskey stealing?

A. Yes; he did.

Q. What was it?

A. He said McCarty offered him two big twenties, or some more, if he would tell who the boys were.

Q. What was that whiskey stealing incident that he referred to?

A. I don't understand it.

Q. Tell the jury what the matter was that Lane referred to when he spoke about the offer of McCarty to him to give information about the boys stealing whiskey. What connection had you with that?

A. I didn't have any connection to it. I came along shortly afterwards.

Q. Came along where do you mean?

A. Where the boys were, that had the whiskey.

Q. What whiskey?

A. Old Mack's saloon whiskey.

Q. Go on and explain to the jury what it was, and when it occurred?

A. I don't remember when it occurred.

Q. About how long prior to this shooting did it occur?

A. That was in the summer before the shooting; last summer.

Q. Go ahead and tell the jury now how it was — that whiskey stealing proposition was — and how you were connected with it?

A. I was working in the stable and came along shortly after they stole it. I was into it and helped drink part of it."

While the defendant's counsel was arguing the case to the jury, the court, in response to such appeal, referring to Reeder's testimony, observed: "The witness said he was 'in it,' but he meant clearly that he was not in the stealing, but was with them afterwards and helped them drink it." The defendant's counsel excepted to such expression, and contends that an error was thereby committed.                              AFFIRMED.

For appellant there was a brief over the names of *E. M. Brattain* and *J. M. Batchelder*, with an oral argument by *Mr. Batchelder*.

For the State there was a brief over the names of *Andrew Murray Crawford*, Attorney General, and *W. J. Moore*, District Attorney, with an oral argument by *Mr. Crawford*.

MR. JUSTICE MOORE delivered the opinion of the court.

1. The question thus presented is whether or not the court's remark to defendant's counsel respecting the testimony given by a witness invaded the province of the jury. Our statute, in prescribing the kind of instructions to be given, contains the following declaration, to wit:

"In charging the jury, the court shall state to them all matters of law which it thinks necessary for their information in giving their verdict, but it shall not present the facts of the case, but shall inform the jury that they are the exclusive judges of all questions of fact": B. & C. Comp. § 139.

It will not do to say that because the language complained of was addressed to defendant's counsel, though in the presence of the jury, that the expression was not used in charging them and for that reason it was harmless. Any person who has carefully observed the attention which jurors give to what they consider to be the court's predisposition towards or opposition to a party, knows that a judge's smile or frown during the trial of a cause seems to influence their minds, thereby affecting their verdict. As spoken language is usually the better means of indicating prejudice or sympathy than facial expression, the former mode of revealing a mental condition is therefore the more prejudicial. Conceding that every comment made by a court in the presence of a jury, respecting the testimony given by a witness, is in the nature of an instruction (*State* v. *Stowell*, 60 Iowa, 535, 15 N. W. 417), the remark complained of will be examined to determine whether or not the language used attempted to present the facts of the case, and for that reason violates the provisions of the statute quoted.

2. That the court's observation to the defendant's counsel was subject to the objection interposed at the trial, they cite the case of *State* v. *Lucas*, 24 Or. 168 (33 Pac.

47 OR.——34

538). In that case the language complained of related to the veracity of an unchaste woman who was an important witness. Her credibility was a question within the exclusive province of a jury to determine, without suggestion by the court. In the case at bar, however, so far as we are able to ascertain from an inspection of the bill of exceptions, the court was only attempting to correct an evident misstatement of Reeder's testimony, by suggesting to defendant's counsel what that witness had unquestionably said.

It is not to be supposed, nor do we intend to be understood as intimating, that the misrepresentation of the testimony was willful. In the excitement necessarily incident to an energetic trial, testimony given in favor of or in opposition to a party frequently produces impressions upon the minds of counsel that are at variance with the declarations under oath of the witnesses as heard by persons who are less interested in the result of the action. It is sometimes difficult to hear distinctly what a timid or hesitating witness has said when called to the stand, and an attorney, in commenting before the jury upon the testimony which he supposes to have been given, may impart to it a coloring not justified by, and possibly at variance with, the exact words spoken. The modern method of reporting trials of actions enables opposing counsel to correct such misstatements by causing the stenographic notes of the testimony given by a witness to be read, thereby avoiding the necessity formerly existing of applying to the court for a correct statement of the language used under oath. Though the precise interpretation of the testimony so given is not at present indispensable by the court, as the arbiter of controversies, when a stenographic report of a trial is made, such modern method does not necessarily preclude a judge, in case the testimony of a witness is evidently misstated by

counsel, from correcting the error, if the language used is a repetition of the testimony given. Thus, in *State* v. *Burns*, 19 Wash. 52 (52 Pac. 316), the defendant having been convicted of grand larceny appealed, and in affirming the judgment Mr. Chief Justice SCOTT, disposing of a similar assignment, declared : " It is next alleged that the court erred in commenting on the testimony. The language complained of is that the court said : ' It is mostly a case of positive testimony.' This was in fact true. The remark was not open to the charge that the court expressed an opinion on the weight of the testimony. There was no error in this respect." An examination of Reeder's testimony, which has been hereinbefore set out in its entirety, on this branch of the case, conclusively shows that the court's remark was in effect a correct statement thereof, and this being so, no error was committed as alleged.

Another alleged error is assigned by defendant's counsel; but, deeming it unimportant, the judgment is affirmed.                                    AFFIRMED.